IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | Chapter 11 |
| JAY AMBE, INC., | Case No. 10-10329 (KJC) |
| Debtor. |  |

## DECLARATION IN SUPPORT OF FIRST-DAY REQUESTS FOR RELIEF

Suren Patel, being over the age of eighteen years and having personal knowledge of the matters set forth herein, declares, deposes, and states as follows:

1.     I am the Vice-President of the above-captioned debtor, Jay Ambe, Inc. (the "Debtor") and have served in that capacity since 1996.

2.     This declaration is submitted in connection with, and in support of, the voluntary petition for relief filed under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and the first-day motions, pleadings and applications filed by the Debtor in the above-captioned Chapter 11 case (collectively, the "First Day Pleadings"). As Vice-President of the Debtor, my duties and responsibilities include reviewing and familiarizing myself with the operations, assets, liabilities, and financial affairs of the Debtor. Accordingly, where appropriate, the facts below are based on the books and records of the Debtor, electronic records, or compilations or summaries thereof, which are kept in the ordinary course of business. I am also a custodian of the books and records of the Debtor as they are kept in the ordinary course of business. Except as otherwise expressly noted, I have personal knowledge of the facts set forth herein and have familiarized myself with the books and records of the Debtor sufficiently to form the opinions stated herein. If called and sworn as a witness, it is my belief that I could and would testify competently to the facts set forth herein.

3.     The purpose of this declaration is to acquaint the Court and other parties-in-interest with the nature of the Debtor's operations and as support for the First Day Pleadings. Part I of this declaration describes the background of the Debtor. Part II sets forth the relevant facts in support of the First Day Pleadings. By making this declaration, it is my intention, at the instruction of the Debtor, to provide sufficient information and evidentiary support for the Court to rule upon the relief requested in the First Day Pleadings. Except as otherwise authorized by the Debtor,[1] this declaration shall not be used for any other purpose.

## PART I

4.     On February 1, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtor has managed its property as a debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

## THE DEBTOR'S BUSINESS

5.     The Debtor owns and operates a motel under the Rodeway Inn franchise. During the last year, the Debtor's business declined precipitously as a result of a general economic slump, which impacted the travel-related industry especially hard. Because of the reduction in revenues, the Debtor was unable to make several mortgage payments to the holder of the first mortgage on the underlying real property (the "Property"). When negotiations to modify the first mortgage were unsuccessful, the mortgagee initiated proceedings to enforce the mortgage, including but not limited to by seeking the appointment of a receiver.

---

[1] The Debtor may withhold its authorization to use this declaration for any other purpose in its sole discretion. The Debtor may also determine, in its sole discretion, that its right and authority to grant or reject another use of this declaration may be irrevocably waived and extinguished, and any such waiver and extinction shall thereafter be binding upon itself and its successors.

6. The Debtor believes that the value of the Property greatly exceeds the amount that might be realized by a sheriff's sale at foreclosure. Because the liquidation value might be so low that other creditors will receive nothing on account of their claims against the Debtor and its assets, the Debtor determined that a reorganization under Chapter 11 of the Bankruptcy Code was in the best interests of its creditors.

7. The Debtor has only five (5) employees, most of which are part-time. The Debtor paid each of its non-insider employees any amounts owing on the Petition Date immediately before filing the case. The Debtor's two principals, who both manage and operate the Debtor's assets, have not received a paycheck for their work since approximately March 2009.

8. Presently, the Debtor's intention is to restructure its debts under a Chapter 11 plan. The Debtor projects that the current economic downturn is not permanent and that its operations will be restored to profitability in the near future. To the extent that a purchaser or investor expresses the intention to acquire the Property or an interest in the Property, the Debtor may also entertain such a proposal. The Debtor hopes to file a plan within 30 days after the Petition Date and seek prompt confirmation thereof.

## PART II

**B. Debtor's Motion For Determination That Cash and Daily Receipts Are Free And Clear Of Liens, Claims, And Other Encumbrances, Or, In The Alternative, For Authority To Use Cash Collateral.**

9. The Debtor has filed a Motion For Determination That Cash and Daily Receipts Are Free And Clear Of Liens, Claims, And Other Encumbrances, Or, In The Alternative, For Authority To Use Cash Collateral. By this motion, the Debtor seeks a determination from the Court that its cash is free and clear of liens, claims, and other encumbrances and can therefore be used to fund its ongoing expenses in the ordinary course of business. If the Court determines

that the Debtor's cash is cash collateral, the Debtor seeks, in the alternative, authority to use its cash collateral pursuant to § 363(b) of the Bankruptcy Code and Fed. R. Bankr. P. 4001(b) so that it can continue to operate its business in order to optimize the prospects for recovery by creditors.

10.     The Debtor is indebted to The Bank ("Lender") under a note dated August 28, 2008 (the "Note") in the approximate amount of $1,880,657.99 (the "Indebtedness"). The Indebtedness is secured by a mortgage against the Debtor's real property upon which the motel sits, as well as by a security interest upon certain of the Debtor's personal property. The Debtor also executed an assignment of rents. Due to the exigent nature of the filing of this case, the Debtor has been unable to determine which of the foregoing mortgage, liens, and security interests were properly perfected.

11.     The Debtor's sole source of revenue is the fees, charges, and other payments for the use or occupancy of rooms at the Debtor's motel ("Use and Occupancy Charges"). The Debtor does not know whether Lender may also assert a lien and security interest on the Debtor's Use and Occupancy Charges, although the Debtor is not presently familiar with any instrument, security agreement, or other document giving Lender any rights in these assets.

12.     As noted above, the Debtor executed an assignment of rents associated with the Property (the "Assignment of Rents"), but the only copy that I was able to make available to the Debtor's attorneys does not appear to have been recorded and therefore appears to be unperfected. Even if the Assignment of Rents had been properly perfected, however, it appears to cover only rents associated with the Property and not Use and Occupancy Charges.

13.     To the best of the Debtor's knowledge, no other entity has or asserts an interest in the Use and Occupancy Charges.

-4-

14.     Without the use of its ongoing receipts, the Debtor will be unable to conduct its business operations and would be forced to shut down immediately.  The Debtor's ability to maintain its business relationships with its vendors and suppliers, to purchase supplies, to pay its franchise dues and related operating expenses, to make payroll, and otherwise to finance its operations is dependent on the continued use of its receipts and is essential to the Debtor's continued viability and ability to operate as a going concern.

15.     Similarly, the Court's authorization to use ongoing receipts to fund operating expenses is crucial to maintaining the value of the Debtor's estate.  The preservation and maintenance of the Debtor's going concern value, as well as the maintenance of the Property, are of the utmost importance to the administration of the Debtor's bankruptcy estate.  The Debtor believes that the only prospect for the best return to all its creditors requires continued operations while the Debtor assesses its options.  The Debtor therefore seeks an order pursuant to § 363 of the Bankruptcy Code,  Fed. R. Bankr. P. 4001, and Del. Bankr. LR 4001-2 authorizing the Debtor's use of ongoing receipts, to the extent that such receipts are cash collateral.

16.     To the extent that the Debtor uses its receipts to fund ongoing operations, the Debtor assumes that Lender may consent, so long as such use is consistent with the Bankruptcy Code and the Debtor's goals during this case.

17.     In the event the Court determines that the Debtor's receipts are cash collateral, the Debtor has submitted a proposed form of order authorizing the use of its cash collateral (the "Proposed Cash Collateral Order"), which provides for, among other things, the continuing postpetition attachment of liens to the Debtor's cash collateral.  The Proposed Cash Collateral Order also provides for payments of interest to the holder(s) of any interest in such cash

collateral until further order of the Court. In my opinion, these two provisions are adequate protection of any claims secured by such alleged cash collateral.

18. The Debtor's ability to pay its operating expenses while in Chapter 11 is essential to any successful outcome of this reorganization. A disruption of payment of such expenses, even for a very short time, would create a serious risk of, among other things, damaging the Debtor's relationship with its vendors, losing customer confidence, jeopardizing its compliance with quality control requirements existing under its franchise, and possibly preventing the Debtor from conducting business at all. Therefore, if the Debtor is not able to use its postpetition cash to pay such expenses, it is my opinion that the Debtor will suffer immediate and irreparable harm.

**C.      Debtor's Motion For Authority To Pay Prepetition Withholding Taxes.**

19. The Debtor has filed a Motion For Authority To Pay Prepetition Withholding Taxes. By this motion, the Debtor seeks entry of an order authorizing the Debtor to pay withholding taxes due to the applicable taxing authorities on account of prepetition periods.

20. In the ordinary course of business, the State of Delaware requires the operator of a motel to collect from customers a sales tax in the amount of 8% of the room charges (the "Sales Taxes"). The amounts collected from customers are then turned over to the state. Such obligations may constitute trust fund taxes under applicable law and any unpaid taxes would likely be entitled to priority treatment under the Bankruptcy Code.

21. In addition, the Debtor has three employees to whom it paid, and will continue to pay, wages in the ordinary course of business. Upon payment to the employees, the Debtor is required to make certain withholdings from their paychecks and turn over the withheld funds to the applicable taxing authorities ("Payroll Withholding Taxes," and with Sales Taxes,

-6-

"Withholding Taxes"). According to the law of the United States and most state and local taxing authorities, the amounts withhold may be treated as trust fund taxes and any unpaid taxes would likely be entitled to priority treatment under the Bankruptcy Code.

22.     I am advised by the Debtor's attorneys that certain trust fund taxes are held by the taxpayer in trust for the benefit of those third parties to which payment is owed or on behalf of which such payment is being made. I am also advised that, as such, trust fund taxes have been held not to be property of the estate within the meaning of § 541 of the Bankruptcy Code. To the extent that Withholding Taxes are trust fund taxes and do not constitute property of the Debtor's estate, they will not otherwise be available to the Debtor's estate or its creditors. Accordingly, payment of the amounts collected before the Petition Date but not yet paid to the applicable taxing authorities will not affect the Debtor's estate or its creditors. Given the drawbacks of failing to pay them, payment is therefore warranted.

23.     In addition, I am advised that many taxing authorities impose personal liability on the officers and directors of an entity that does not turn over Withholding Taxes. Thus, to the extent that any prepetition Withholding Taxes remain unpaid, I am advised that the Debtor's officers and directors may be subject to lawsuits or even criminal prosecution on account of such nonpayment during the pendency of this Chapter 11 case. In my opinion, such lawsuits or proceedings obviously would constitute a significant distraction for the Debtor's officers and directors at a time when they should be focused on the Debtor's efforts to stabilize its postpetition business operations and to implement a successful reorganization strategy.

24.     Moreover, it would be unjust to expose them to personal liability for the Withholding Taxes under the circumstances present here. Finally, I believe that the applicable

taxing authorities could cause the Debtor to be audited if the tax obligations are not paid promptly. Such audits would further divert attention from the reorganization process.

25.    The Debtor's records currently indicate prepetition Sales Taxes owed in the approximate amount of $17,000.00. In addition, the State of Delaware has recently sent the notice seeking payment of certain Payroll Withholding Taxes in the amount of $1,396.76, which the Debtor believes were already paid but will seek to pay in the event it is incorrect.

26.    I believe that, among other things, the Debtor's successful reorganization will require good standing in Delaware and a complete devotion of effort by its officers and directors to this case. Given that the Debtor's operations are carried out almost exclusively by its two officers, any attempt by the State to exercise remedies against the Debtor or its officers could have a devastating impact upon this reorganization. Therefore, if the Debtor is not able to pay its prepetition sales tax liabilities, it is my opinion that the Debtor will suffer immediate and irreparable harm.

### D.    Debtor's Motion for Order Treating Case as a Small Business Case And Directing That No Official Committee Be Appointed.

27.    The Debtor has filed a Motion for Order Treating Case as a Small Business Case And Directing That No Official Committee Be Appointed. By this motion, the Debtor seeks entry of an order treating this case as a small business case and directing that no official committee, including but not limited to an Official Committee of Unsecured Creditors, be appointed in this case, pursuant to 11 U.S.C. § 1102(a)(3).

28.    The Debtor asserts that it is a small business in accordance with § 101(51D) of the Bankruptcy Code and made this notation on its Chapter 11 petition. Because the Debtor is not yet able to calculate its total noncontingent, liquidated debts as of the Petition Date, the Debtor is

uncertain whether or not its debts exceed the monetary definition of a small business. The Debtor, however, asserts that the purpose underlying the small business debtor classification is applicable to this Debtor and believes that the Court will ultimately conclude from the non-monetary alternative definition that the Debtor falls within the definition of small business debtor.

29.     The Debtor is a very small company operating on a very tight budget. The Debtor's average monthly revenue was between $40,000 to $45,000, but because of the recent downturn, is now between $25,000 and $30,000. After payment of current expenses, the Debtor has very little cash remaining in which to pay its own attorneys, much less a second law firm. Most unsecured creditors have very small claims against the Debtor's estate, and the Debtor anticipates that any potential distribution to unsecured creditors would be consumed by paying professionals to a committee. Thus, no purpose would be served by having a second fiduciary for the benefit of creditors overseeing the process.

30.     Similarly, the Debtor chose its existing counsel because of the firm's extremely competitive rates, in comparison to Delaware law firms qualified to handle sophisticated Chapter 11 cases. Should the Court appoint an official committee, I am told that there are very few firms that could provide it with adequate representation without severely overshadowing the fees of Debtor's counsel.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING
IS TRUE AND CORRECT.

JAY AMBE, INC.

Dated: 02\01\10          by:_____
                              Suren Patel, Vice-President